Again, for the record, I'm John Rhodes. I'm from the Missoula Office of the Federal Defenders of Montana. I represent Ralph Fox. The government relied on the same stipulation regarding the child pornography images to support the convictions of both Count 2 and Count 3. Count 2 was the receipt of child pornography. Count 3 was the possession of child pornography. The parties entered into a stipulation regarding many of the elements of Count 2 and Count 3. The bottom line was we stipulated that the child pornography elements had been established. And the government relied on those stipulations when it urged the trial court who sat as the fact finder in the case to convict Mr. Fox. And the court relied on those same stipulations to convict Mr. Fox. And, therefore, the court violated double jeopardy by sentencing Mr. Fox on both of those counts. And at trial, when I raised a due process argument that the court could not rely on the same factual basis, the same set of evidence, to convict Mr. Fox of both possession and receipt of child pornography, rather than focusing on the evidence, the court said it's very clear there's a distinction between the receipt of the pornography in Count 2 and the saving of the pornography or the possession of the pornography in Count 3. So rather than looking at the underlying images or evidence that substantiated the counts, the court responded to my argument by saying, well, there are different acts involved. Well, we know that subsequent to the court making that ruling, this court said that possession of child pornography is a lesser-included offense of receipt of child pornography in the Davenport case. So the court's reasoning was simply wrong. If we're talking about the same images. Correct. If we're talking sort of equivalent, let's put aside the images that he himself took, that he has a bunch of stuff that looks like it was downloaded, and he had some stuff that he pictured that he took himself. It's a handful of images that were... So let's, just for the sake of this question, put aside the stuff that he took the picture himself. As to any one of those images that he downloaded, he could be convicted of either possession or receipt. Correct, Your Honor. And the way the jury was instructed... It was a bench trial, Your Honor. Oh, it was a bench trial. Okay. So why don't we assume that the district judge knew this and assigned some of them for receipt and some of them for possession? Had the government said, Your Honor, or if it was a jury, ladies and gentlemen of the jury, we want you to convict for possession on image number one and for receipt based on image number two, there would not be the double jeopardy due process problem. But nobody made this argument because the law didn't exist at the time. There was no differentiation of the images. And again, when I argued that point to the trial in closing argument, the court did not look at the underlying evidence. It just responded by saying, well, receipt is different from possession. But, I mean, even Overton itself recognizes the bench trial. I mean, the district court looked at the evidence. He had all of it before him, and there was a rational distinction to be made and indicated later on that, you know, in one part, there's the possession aspect of the evidence to support that, and there's enough to also support receipt by way of the downloads from the Internet. I mean, there are two different qualitative kinds of conduct in the records, I suppose, that the district court heard. And to say that somehow he only focused on Internet stuff to reach conviction strikes me as a little... Well, it's when you say qualitative conduct, I think that's the same mistake that the district court made. It said receipt is different than possession. We weren't saying... Davenport rejected that argument. We're saying it's the underlying evidence. And yes, there were dozens and dozens, hundreds, perhaps thousands of images. And the Shales case directly addresses that point. Even though in Shales there were thousands of images, the basis for the conviction was not clarified at the time of conviction. That was the error here. And the government, as did we, ruled... waived its opportunity for a Rule 23c explanation of the basis for the sentence. And this court in Benchwick said Rule 23c contemplates a single set of special findings entered at time of entry of the general findings. We waived that opportunity. The government waived it. Well, we made our argument regarding the due process violation. The court did not differentiate the basis. He just rendered a general verdict. Yes. In essence, he entered a general... Why don't we just assume, as Judge Kaczynski suggested, that he considered... you know, he looked at the different exhibits that were submitted. He looked at the different exhibits that were submitted.  and the possession of the pornography. Because that's not what the Court said. We made the argument... Yes, but he rendered a general verdict, though. Well, the Court in response to my argument regarding this due process violation said there's a distinction between the receipt of the pornography in Count 2 and the saving of the pornography or the possession of the pornography in Count 3. Well, let's assume that he considered all the evidence. He says all were received and all were possessed. Why don't you say, okay, so all, half is less than whole, than all. And so he found that half were possessed and half were received. And the rest is surplus. Yes. Had the Court made that sort of distinction, we couldn't make this argument. No, no, let's say it didn't make a distinction. It says all were received, all were possessed. And we say, fine, that's true. And as to any one image, he can't find both. But we'll just presume that he found half. And we know that he found half were received. And we also know he found half were possessed. Now, he found more than that, but we ignore the rest. If that had been the verdict, then we couldn't make the argument that that was not the verdict. And, in fact, if the Court said, I'm basing the receipt conviction on all the images, and I'm basing the possession conviction on all the images, there would still be a due process problem. What is the most he can get by way of a remedy here, assuming you're right? We send it back and have Judge Molloy say, well, I meant half. Do you get any more than that? Well, the Court would be obligated. The remedy we're seeking is to vacate one of the two convictions, either count two or count three. The other remedy that we're seeking — Well, it doesn't help you for sentencing purposes, right, because it's whole conduct. It would help for sentencing if the Court vacated one of the convictions, because then we would either have a 20-year reduction from the sentence or a 40-year reduction from the sentence, depending on which count the Court vacated. So there is that effect. And what happens — and who does the vacating, and what happens to the vacated conviction if that happens? The district court has the discretion to decide which count to vacate, and then once it's vacated, the case is over with respect to that count. You couldn't retire? No, because that would be a double jeopardy violation. Why would that be a double jeopardy violation? Because he's already been tried and convicted, which is the government's prerogative. But for sentencing purposes, under his United States Supreme Court case, Ball, and then this Court's case in Hector, the district court is obligated to exercise its discretion and vacate one of the two double jeopardy convictions. I'm running out of time here. I also want to address quickly, and then try to save a little bit of time, the country of origin labeling issue, which the government used as a basis for count one. All the witness did was read the label, and we would maintain that's insufficient evidence to establish federal jurisdiction. The government could have investigated the cameras at issue by tracing the serial numbers back to wherever these cameras originated. It didn't do that. All it did was read the label, and we would maintain that's an insufficient evidentiary basis for the count one conviction. You mean it might have been manufactured in Montana, and they put Japan or whatever,  Yes. Conceivably, Your Honor, yes. If I could just save a little bit of time for rebuttal.  Thank you. We'll hear from the government. May it please the Court. I'm Marcia Hurd from the District of Montana. I tried this case below and wrote the brief on appeal. I assume this is just a travelly roadshow. It is. And unfortunately, the Davenport case, the Hector case, and the Kuczynski case were all mine as well. So I'm somewhat familiar with these issues. This is not a Davenport issue. It just isn't. At the time this case was tried, it was March 10th of 2008. Davenport was not ruled upon by this Court until March 20th of 2008. And as Mr. Rhodes points out, this was a general verdict. Nobody asked for specific findings in this case. It was after Davenport was issued that then the defense filed the motion to dismiss either count two or count three, the receipt or possession count. And the judge made a specific finding, again, that the images that he relied on for receipt and possession were different because this is a man who had produced images in count one. He had produced child pornography that was different than child pornography he received. And he continued to possess those images. So there just simply isn't a double jeopardy or Davenport problem here. And I think that's more than a bit of a red herring. The defense argues that there's been some sort of post-trial fact-finding, and he cites a number of cases about post-trial fact-finding. But those are all jury cases. Those are all issues about what a jury verdict was and what the jury did in that verdict. And this was a bench trial with a general verdict. And the judge was presumed to have heard all the evidence, heard that there was a difference between the items received and the items possessed and produced, and made that decision. And so I just think that that really isn't the big issue here. The other issue that's been raised here briefly at the end of oral arguments is this country of origin labeling. And it's not accurate to say that all the witnesses did was simply read the labels on these cameras. The two forensic examiners who do nothing but review items of computers and CDs and cameras all day long testified of their own personal knowledge that neither of these video cameras or cameras were manufactured within the State of Montana, that they had personal knowledge to that. And so it wasn't simply just reading off the label on either one of these items. So the personal knowledge aspect, in addition. Vaguely. I mean, honestly, because the first witness. What was the basis of their personal knowledge? The basis of their personal knowledge was the fact. They were experts in child pornography and video equipment. Well, that they. Experts that we had before. No, different experts, different agency. These were actually State agents. And the judge even asked, well, can I just take judicial knowledge of the fact that or neither of these companies have facilities within the State of Montana. We're not really known for our big manufacturing facilities, more like, you know, cattle and sheep. So in this case, that, again, is just really not an issue. You had two people who really weren't challenged as to the basis of their knowledge to say these images or these pieces of equipment traveled in interstate commerce. Is having a medium on which these images are stored enough to give an interstate commerce nexus? Yes. Under McCullough, it is. Under this Court's decision in the McCullough case, it is. That issue was brought up at trial, and then McCullough was decided after that, and the defense has conceded on appeal, has raised the issue basically to maintain that position. But the fact that the items themselves traveled in interstate commerce is enough to facilitate interstate jurisdiction for the Federal courts. And then the final issue, of course, was the sentencing issue that really hasn't been raised on oral arguments. But Ralph Fox is a man who deserved every month of a 110-year sentence. He has a prior child pornography or child sexual abuse conviction, spent some significant time in prison for that, asked for the death penalty in his allocution to the court, and said there's no way to stop me from doing this again, even locking me up isn't going to stop me. So the allegation on appeal that this was an unreasonable sentence and that he should have been given some, I guess, credit for his mental health issues and not been sentenced so long is simply a good reason to keep him away for as long as possible. This was a man who wasn't going to stop, is not treatable, and, as I've said, deserved every month that he was given in terms of this sentence. The one issue that was raised by the Court is what would happen if you find there's a double jeopardy issue. And the defense is correct. It would be remanded for the district court to decide which of the either receipt or possession should be dismissed under your Hector case. But actually, it's not just vacated. It's, as the language in Davenport and Hector and all the other cases indicate, vacated with instructions to reinstate if the other count is reversed either on appeal or on some post-conviction relief. So it's not just an outright vacation of the conviction. There are some conditions to that. Are there any other questions from the panel? Thank you. Okay. Thank you. Do you have a minute for rebuttal? Thank you, Your Honor. There was a general verdict rendered, but the district court, Judge Malloy, did address this specific issue regarding the different evidence that we said had to support the different counts. As I said, all the judge said was, well, receipt is different than possession, and that's at ER-226 through ER-229. With respect to the courts after the trial ruling, Mr. Fox waived his right to jury at trial, and he didn't waive his right to have jeopardy attached. He didn't waive his right to have a lawyer and a right to due process. And it's simply unfair and violates all those rights for an argument to be raised at trial to be addressed by the fact finder to the extent it was addressed by the district court, and then some point later for the district court to go back and reopen the fact finding and say, well, now that I can have a second bite at this apple, this is what I'm going to conclude. What's the different fact finding? Is if the district court after the trial in its order came back and said that the evidence supporting the possession conviction is different from the evidence supporting the receipt conviction. Even though that's quite clear from the record that that's the fact. Well, that's what I was going to say is the district court said not necessarily so. That was the phrase used by the district court. And when we're dealing with a beyond a reasonable doubt standard, not necessarily so does not meet that standard. So for all those reasons, we would urge that the count one conviction be vacated because the district court, there was not jurisdiction established by the reading of the country of origin labels into the record, and that this court remand this case to the district court so it can exercise its discretion and vacate either the possession or the receipt count. Thank you. Thank you. Thank you. The case is argued with counsel minutes.
judges: Kozinski, Fisher, Paez